**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**TARSHA COSTON**                                    **CIVIL ACTION**

**VERSUS**                                                  **CASE NO. 15-1809**

**WINDFALL INC., et al.**                            **SECTION: "G"(4)**

## ORDER

In this litigation, Plaintiff Tarsha Coston seeks damages arising out of a motor vehicle accident that allegedly occurred on June 1, 2014.[1] Pending before the Court are three motions filed by defendants Windfall Inc., Harco National Insurance Co. and Clint Heckt (collectively "Defendants"): a "Motion in Limine to Exclude Report of Plaintiff's Economist and Any Evidence and/or Testimony of Future Medical Expenses for Lifetime Rhizotomies,"[2] a "Motion to Strike 'Revised' Report of Plaintiff's Economist G. Randolph Rice,"[3] and a "Motion in Limine to Exclude Revised Report of Plaintiff's Economist In Part and Any Evidence and/or Testimony of Future Lifetime Medical Expenses for a Spinal Cord Stimulator."[4] Having considered the motions, the memoranda in support and in opposition, the applicable law, and the record, the Court will deny the motions.

---

[1] Rec. Doc. 1-2.

[2] Rec. Doc. 28.

[3] Rec. Doc. 29.

[4] Rec. Doc. 35.

1

## I. Background

Plaintiff alleges that on June 1, 2014, she was driving in the Parish of Tangipahoa when Defendant Clint Heckt attempted an illegal right hand turn and collided with Plaintiff's vehicle.[5] Plaintiff alleges that she has developed neck and lower back pain following the accident.[6] Plaintiff initially received chiropractic care and then was treated by pain management specialist Dr. Joseph Turnipseed ("Dr. Turnipseed").[7] Plaintiff has undergone three lumbar rhizotomies and one cervical rhizotomy.[8] Plaintiff has also undergone neurological evaluations with Dr. Anthony S. Ioppolo ("Dr. Ioppolo").[9]

On January 21, 2016, Plaintiff provided to Defendants a report of her economist, Dr. G. Randolph Rice ("Dr. Rice"), in compliance with the Court's Scheduling Order.[10] On March 15, 2016, Defendants filed their first "Motion in Limine to Exclude Report of Plaintiff's Economist and Any Evidence and/or Testimony of Future Medical Expenses for Lifetime Rhizotomies" on the grounds that Plaintiff cannot show that it is more probable than not that these expenses are medically necessary and will be incurred, and therefore Dr. Rice's opinions are not sufficiently reliable under Federal Rule of Evidence 702(b).[11] Defendants contend that on March 15, 2016, more than 45 days after the Plaintiff's deadline for production of expert reports, and after the first

---

[5] Rec. Doc. 1-2 at 2.

[6] Rec. Doc. 28-8 at 1.

[7] Rec. Doc. 28-2 at 3.

[8] *Id.* A rhizotomy is an outpatient procedure where a doctor intentionally damages a patient's nerves in order to provide pain relief. Rec. Doc. 39-1 at 6.

[9] Rec. Doc. 35 at 8.

[10] Rec. Doc. 29 at 1.

[11] Rec. Doc. 28.

motion in limine was filed, Defendants received a "revised" economic report, purportedly based upon the deposition testimony of Plaintiff's pain management specialist, Dr. Turnipseed, and Plaintiff's neurosurgeon Dr. Ioppolo.[12] In that second report, Dr. Rice revised his calculations for Plaintiff's future medical expenses to reflect expenses for rhizotomies for only five years, rather than for the rest of Plaintiff's life as the original report had indicated, and added expenses for a spinal cord stimulator trial, a spinal cord stimulator implant, a generator/replacement every 7-10 years, as well as office visits (collectively "spinal cord stimulator").[13]

On March 17, 2016, Defendants filed a "Motion to Strike 'Revised' Report of Plaintiff's Economist G. Randolph Rice" as untimely.[14] On March 22, 2016, with leave of Court, Defendants filed a second motion in limine titled "Motion in Limine to Exclude Revised Report of Plaintiff's Economist in Part and Any Evidence and/or Testimony of Future Lifetime Medical Expenses for a Spinal Cord Stimulator."[15] Therein, Defendants move to exclude the portion of Dr. Rice's second report regarding future lifetime medical expenses for a spinal cord stimulator, as well as any testimony regarding the same, on the grounds that Plaintiff cannot satisfy her burden of showing that it is more probable than not that these expenses are necessary.[16] Therefore, Defendants assert that as there are not sufficient facts to support Dr. Rice's expert opinions, as required by Federal Rule of Civil Procedure 702(b), and the report is unreliable.[17] Plaintiff filed oppositions to the

---

[12] Rec. Doc. 29 at 2–3.

[13] Rec. Docs. 29-6, 29-10.

[14] Rec. Doc. 29.

[15] Rec. Doc. 35.

[16] *Id.* at 1.

[17] *Id.* at 6.

motion to strike and the motions in limine on March 28, 2016.[18] With leave of Court, Defendants filed reply memoranda on March 30, 2016.[19] Also on March 30, 2016, the Court granted Defendants' unopposed "Motion to Reopen Discovery for the Purpose of Deposing Dr. Anthony Ioppolo."[20]

## II. Law and Analysis

### A.    *Legal Standard for Exclusion of Expert Testimony*

The district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702, which governs the admissibility of expert witness testimony.[21] Rule 702 provides that an expert witness "qualified . . . by knowledge, skill, experience, training or education," may testify when "scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."[22]

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that Rule 702 requires the district court to act as a "gatekeeper" to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable."[23] The overarching goal "is to make certain that an expert, whether basing testimony on professional studies or personal experience, employs

---

[18] Rec. Docs. 39, 40. Record Document 40 contains arguments in opposition to Defendants' motion to strike, as well as the motion in limine seeking to exclude the portion of Dr. Rice's second report pertaining to future medical expenses for the spinal cord stimulator.

[19] Rec. Docs. 45, 47. Record Document 45 contains arguments in support of both of Defendants' motions in limine.

[20] Rec. Doc. 48.

[21] *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000).

[22] Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

[23] *Daubert*, 509 U.S. at 589; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (clarifying that the court's gatekeeping function applies to all forms of expert testimony).

in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[24]

A court's role as a gatekeeper does not replace the traditional adversary system,[25] and "[a] review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule."[26] As the Supreme Court noted in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[27] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility."[28]

**B.** **Legal Standard for Exclusion of Evidence for Failure to Comply with the Deadline for Disclosure**

Failure to comply with the deadline for disclosure requirements may result in exclusion under Federal Rule of Civil Procedure 37(c)(1), and the party is not allowed to use "that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."[29] In evaluating whether to exercise its discretion to exclude evidence, the Fifth Circuit instructs that courts should consider four factors: (1) the explanation of the party for its failure to disclose; (2) the importance of the excluded testimony

---

[24] *Kumho Tire*, 526 U.S. at 152.

[25] *See Daubert*, 509 U.S. at 596.

[26] Fed. R. Evid. 702 advisory committee's note, "2000 Amendments."

[27] *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

[28] *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

[29] Fed. R. Civ. P. 37(c)(1).

and/or evidence; (3) the potential prejudice that would arise from allowing the testimony; and (4) the availability of a continuance to cure such prejudice.[30]

## C.   Analysis

### 1.   Expert Report and Testimony Regarding Medical Expenses for a Lifetime of Rhizotomies

Defendants do not dispute Dr. Rice's qualifications as an expert in the field of economics, but contend that Dr. Rice, in calculating Plaintiff's projected future medical expenses, does not rely upon any medical testimony that lifetime rhizotomies are medically necessary and therefore his report and testimony related to the cost of lifetime rhizotomies must be excluded.[31] According to Defendants, Federal Rule of Evidence 702(b) requires an expert's testimony to be based upon sufficient facts or data, and under Louisiana law, in order to determine whether a plaintiff is entitled to future medical expenses, a plaintiff must prove by a preponderance of the evidence that the future medical expenses are medically necessary.[32] In opposition, Plaintiff contends that both Dr. Turnipseed and Dr. Ioppolo have stated that if Plaintiff's pain continues, it is more probable than not that she will need to undergo some form of treatment in the future and the tortfeasor should not benefit from the fact that the trial is occurring before Plaintiff has completed all treatment.[33]

Here, Defendants contend that Dr. Turnipseed explicitly refused to testify that Plaintiff, more probably than not, will need cervical and lumbar rhizotomies for the rest of her life and stated

---

[30] *Betzel v. State Farm Lloyds*, 480 F.3d 704, 707 (5th Cir. 2007); *Texas A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003).

[31] Rec. Doc. 28-2 at 4.

[32] *Id.* at 4–5 (citing *Menard v. Lafayette Ins. Co.*, 2009-C-1869 (La. 3/16/10); 31 So. 3d 996).

[33] Rec. Doc. 39 at 2, 5.

that he can only speculate about Plaintiff's future medical treatment.[34] Dr. Turnipseed testified that typically after five rhizotomies, the procedures lose their efficacy in terms of treating a patient's pain.[35] Dr. Turnipseed also testified that he anticipated the need for treatment other than rhizotomies when he answered "Yes" to the question "Has it been your experience through your training, education and background, . . . that over time though your expectation would be that you're going to have to find something other than a rhizotomy to address Ms. Coston's pain?"[36] However, Dr. Turnipseed also testified that he "fe[lt] that [Plaintiff] is going to require treatment going forward and [he] will continue to do these rhizotomies for her as long as they help her. When they stop helping her, then . . . [he] will get her back to see Dr. Ioppolo."[37]

In support of the motion to exclude Dr. Rice's testimony, Defendants cite, as persuasive authority, a case from another section of the Eastern District of Louisiana, *Wilcox v. Max Welders, L.L.C.*[38] In *Wilcox*, the defendants filed a motion in limine to exclude the report and testimony of the plaintiff's expert life care planner who based her report on information provided to her by the plaintiff's doctor, who stated in his deposition that he did not believe that the plaintiff would require 24-hour care after three to five years.[39] The court determined that there was no evidence that the plaintiff would require lifelong 24-hour supervision and therefore there was an insufficient

---

[34] Rec. Doc. 28-2 at 6.

[35] Rec. Doc. 28-4 at 4.

[36] *Id.* at 7.

[37] *Id.* at 5.

[38] *Id.* (citing No. 12-2389, 2013 WL 4517907 (E.D. La. Aug. 22, 2013) (Africk, J.)).

[39] 2013 WL 4517907, at *1.

basis to support the anticipated testimony regarding the cost of lifelong 24-hour supervision.[40] Therefore, the court excluded the proffered evidence pursuant to Federal Rule of Evidence 702 and on the grounds that the probative value of the expert opinion is substantially outweighed by the danger of unfair prejudice, the wasting of time, and of misleading the jury pursuant to Federal Rule of Evidence 403.[41]

However, in a later decision by the same section of the Eastern District of Louisiana, *Anders v. Hercules Offshore Services, LLC*, the court distinguished its holding in *Wilcox*, stating that in *Wilcox*, the plaintiff's expert had opined that certain treatments would not be necessary, where, in *Anders*, the plaintiff's expert had opined that certain treatment might be necessary depending upon the result of prior treatments.[42] The court in *Anders* noted that questions relating to the bases and sources of an expert's opinion affect the weight to be assigned to the opinion rather than to its admissibility and denied the motion to exclude the testimony of the expert economist.[43] However, the court noted that projected treatment costs must be based on evidence regarding the treatment that a plaintiff will probably need, not simply the treatment that he might need.[44] The court also cautioned that the economist would not be permitted to testify at trial as to any projected treatment costs that were not supported by sufficient evidence at that time.[45]

---

[40] *Id.*

[41] *Id.*

[42] 311 F.R.D. 161 (E.D. La. 2015) (Africk, J.).

[43] *Id.* at 165.

[44] *Id.* (citing *Boudreaux v. Ace Am. Ins. Co.*, No. 11-1213, 2013 WL 1288633 (E.D. La. 3/26/13) (Berrigan, J.)).

[45] *Id.*

Although neither case is binding on this Court, this case is more similar to *Anders* than to *Wilcox*. Although Dr. Turnipseed appears to anticipate a time when rhizotomies will no longer be effective, he has also testified that he will continue to do rhizotomies as treatment for Plaintiff as long as they provide Plaintiff relief.[46] Therefore, this case differs from *Wilcox* where the plaintiff's doctor had stated that certain care would not be necessary after a certain amount of time. To the extent that Defendants argue that Dr. Rice's calculations overestimate Plaintiff's future losses, Defendants may rely upon "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" to attack what it believes is "shaky but admissible evidence," but such evidence need not be excluded altogether.[47]

Defendants also cite a Louisiana Third Circuit Court of Appeal case, *Smith v. Municipality of Ferriday*, and a Louisiana Fourth Circuit Court of Appeal case, *George v. Delta Queen Steamboat Co.*, for the proposition that a plaintiff is not entitled to future medical expenses when there is no testimony regarding the specific future medical treatment necessary and the cost of such treatment.[48] However, in both of these cases, the court analyzed the trial record to determine whether an award was appropriate. Although at trial it will be Plaintiff's burden to demonstrate that her future medical expenses will more probably than not be incurred,[49] the Court cannot now state, without the context of testimony and evidence as developed through trial, that she will be

---

[46] Rec. Doc. 28-4 at 5.

[47] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993) (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

[48] Rec. Doc. 28-2 at 6 (citing *Smith v. Municipality of Ferriday*, 2005-755 (La. App. 3 Cir. 2/1/06); 922 So. 2d 1222, 1231; *Delta Queen Steamboat Co.*, 2001-11902 (La. App. 4 Cir. 9/10/03); 854 So. 2d 476).

[49] *Menard v. Lafayette Ins. Co.*, 2009-C-1869 (La. 3/16/10); 31 So. 3d 996, 1006.

unable to do so. The Court therefore concludes that it need not exclude Dr. Rice's report or testimony concerning Plaintiff's future medical expenses related to a lifetime of rhizotomies.

### 2.    Expert Testimony Regarding Medical Expenses for a Spinal Cord Stimulator

Defendants make two arguments in support of the exclusion of the report and testimony regarding the medical expenses related to a spinal cord stimulator. First, Defendants move to strike Dr. Rice's second report on the grounds that it is untimely, and second, Defendants assert in their motion in limine that Plaintiff cannot show that it is more probable than not that the expenses pertaining to a spinal cord stimulator are medically necessary and will be incurred.[50] The Court will first address the motion to strike Dr. Rice's second report and then, if necessary, will turn to Defendants' motion in limine.

#### a.    Motion to Strike

"The basic purpose of [Federal] Rule [of Civil Procedure] 26 is to prevent prejudice and surprise."[51] Therefore, the Court may exclude expert testimony that fails to comply with the disclosure requirements imposed by the Federal Rules of Civil Procedure, "unless the failure was substantially justified or is harmless."[52] In evaluating whether to exercise its discretion to exclude evidence, the Fifth Circuit instructs that courts should consider four factors: (1) the explanation of the party for its failure to disclose; (2) the importance of the excluded testimony and/or evidence;

---

[50] Rec. Docs. 29, 35.

[51] *Joe Hand Promotions, Inc. v. Chios, Inc.*, 544 F. App'x 444, 446 (5th Cir. 2013) (internal quotations and alterations omitted).

[52] Fed. R. Civ. P. 37(c)(1).

(3) the potential prejudice that would arise from allowing the testimony; and (4) the availability of a continuance to cure such prejudice.[53]

Here, the parties agree that Plaintiff timely provided Defendants with the original report of Dr. Rice on January 21, 2016, prior to the January 27, 2016 deadline for Plaintiff's expert reports set by the Court.[54] Defendants contend that Plaintiff then submitted, on March 15, 2016, a "revised" report which, they contend, is actually a new report that should have been produced by the January 27, 2016 deadline.[55] In this second report, Dr. Rice includes calculations for the cost of a spinal cord stimulator trial, spinal cord stimulator implant, as well as the costs of replacement of the implant, where the original report contained no such costs.[56] The second report also provides a calculation of the costs for five cervical rhizotomies and five lumbar rhizotomies,[57] whereas the original report contained calculations for lifetime rhizotomies.[58]

### i. Explanation of the Party for its Failure to Disclose

Plaintiff asserts that its untimely submission of its second report is substantially justified because Dr. Turnipseed's deposition did not take place until February 29, 2016, after which Plaintiff provided the deposition to Dr. Rice and Dr. Rice provided the supplemental report as quickly as possible.[59] In response, Defendants contend that Plaintiff arguably had access to her

---

[53] *Betzel v. State Farm Lloyds*, 480 F.3d 704, 707 (5th Cir. 2007); *Texas A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003).

[54] Rec. Doc. 29-2 at 2.

[55] *Id.* at 4.

[56] Rec. Doc. 29-10.

[57] *Id.*

[58] Rec. Doc. 28-7.

[59] Rec. Doc. 40 at 4.

treating physicians, Dr. Turnipseed and Dr. Ioppolo, and therefore, the deposition testimony of Dr. Turnipseed was not necessary for Plaintiff's economist to issue a second report, and furthermore, there have been no changes in the medical treatment plan or medical condition to justify the second report.[60]

Plaintiff argues that the deposition testimony of Dr. Turnipseed prompted Plaintiff to submit a revised report of Dr. Rice to reflect this deposition testimony.[61] However, this deposition testimony was not based upon any changes to Plaintiff's condition or her likely treatment. Rather, Dr. Turnipseed was asked "[L]et's just say this rhizotomy that's performed, let's just say for whatever reason [it] does not provide relief or she relates to you it doesn't provide relief, at that point in time would you relay to Ms. Coston that you believe you've done all you can for her with regard to the low back and say she should visit Dr. Ioppolo as to that area of the body?" to which he responded:

> Well, I wouldn't necessarily say that I've done all I can for her. She's not a great candidate for the lumbar epidural steroid injections related to her diabetes, not saying that I won't do them with a lower doses, but we'll try to avoid them. I would refer to Dr. Ioppolo, you know, if there's no surgery that can be offered which you know she's got a negative MRI so I'm not sure other than an extensive lumbar fusion could be offered by a surgeon especially in a patient that is overweight such as her. It may not be an option. So ultimately, you know, I could discuss the spinal cord stimulator with her, however, you know, that's way down the line. I don't have a crystal ball right now. I'm in the middle of her treatment that has been helping her.[62]

It appears, therefore, that Plaintiff's argument for why she failed to submit the second report before the expert report deadline is that she just recently became aware of a potential future treatment.

---

[60] Rec. Doc. 47 at 2.

[61] Rec. Doc. 40 at 4.

[62] Rec. Doc. 39-1 at 11.

However, Plaintiff does not explain why she was unable to access information regarding all potential future treatments prior to the deadline for submission of the expert reports. Furthermore, in Dr. Turnipseed's opinion this treatment is one that is speculative at this stage as Dr. Turnipseed asserts that the spinal cord stimulator would be something he would discuss with Plaintiff "way down the line" and that he does not "have a crystal ball right now."[63] Therefore, this factor weighs in favor of exclusion.

### ii.      Importance of the Evidence

Neither Plaintiff nor Defendants brief the Court on the importance of the report and the testimony Defendants seek to exclude. However, in their motion to strike, Defendants specifically seek to exclude the second report of Dr. Rice that was submitted more than a month and a half after the deadline for expert report disclosures. As discussed above, the Court declines to exclude the first report and related testimony of Dr. Rice. Therefore, the exclusion of the second report would not completely prohibit Dr. Rice from testifying regarding Plaintiff's future medical expenses. The evidence sought to be excluded in Dr. Rice's second report is the cost of future medical treatment that Defendants additionally argue is inadmissible as it is speculative and unreliable.[64] Given that the Court has denied the motion to exclude the first report of Dr. Rice and therefore Dr. Rice will be allowed to testify regarding the expert report that was timely disclosed by Plaintiff and that Plaintiff has made no other argument regarding the importance of this testimony, the Court concludes that this factor weighs in favor of exclusion.

---

[63] *Id.*

[64] Rec. Doc. 35 at p. 6.

### iii.        Potential Prejudice from Allowing the Testimony

Defendants contend that this second report is a "thinly veiled attempt to circumvent the Court's deadlines and the Federal Rules of Procedure."[65] Defendants assert that the timing of the production of this report was calculated to prejudice Defendants and was not substantially justified because: (1) it was produced more than forty-five days after Plaintiff's deadline to produce expert reports; (2) it was produced after Defendants filed their original motion in limine to exclude Dr. Rice's original report; (3) the production occurred within hours of the deadline for motions in limine regarding the admissibility of expert testimony; (4) although Plaintiff has been treating with Dr. Turnipseed for almost two years and he has never recommended the lifetime medical procedures outlined in Dr. Rice's reports, the second report was purportedly based on Dr. Turnipseed's deposition testimony; and (5) Defendants received the second report less than two hours before the deposition of their expert was set to commence.[66] In opposition, Plaintiff contends that the late submission of Dr. Rice's second report is substantially justified and harmless because Defendants were aware that Plaintiff had retained Dr. Rice as an expert economist.[67] Furthermore, Plaintiff asserts that Defendants have requested the opportunity to depose Dr. Ioppolo and Plaintiff has not objected to that request.[68]

On March 30, 2016, the Court granted Defendants' motion to reopen discovery for the limited purpose of deposing Dr. Ioppolo who, after the close of discovery, opined for the first time

---

[65] Rec. Doc. 29-2.

[66] *Id.* at 2.

[67] Rec. Doc. 40 at 4.

[68] *Id.*

that if Plaintiff continues to experience pain in four or five years, Plaintiff would be best treated with a trial for a spinal cord stimulator implantation.[69] The Court notes, however, that this opinion from Dr. Ioppolo is dated March 22, 2016, after Dr. Rice submitted his revised report.[70] Therefore, the impetus for the submission of the revised report was based only upon the opinion of Dr. Turnipseed. The Court has also granted Defendants leave to file a motion in limine regarding Dr. Rice's second report after the Court's deadline.[71]

Although Defendants assert that they will be prejudiced if the Court allows this testimony, Defendants have not identified any actions that they would have taken had they been in possession of this report sooner.[72] They have been granted leave to file and have in fact filed a motion in limine to exclude a portion of Dr. Rice's second report.[73] Although Defendants assert that they only received the second report two hours before the deposition of their expert, Dr. Najeeb Thomas, they do not articulate how the deposition would have changed had they had the report sooner. The Court does note that Defendants filed a motion in limine regarding Dr. Rice's original report and Plaintiff, later that day, on what was the very last day for filing motions in limine, delivered the second report, which includes medical expenses for an entirely new procedure that was not included in the first report, and modifies the calculations for rhizotomies from the cost of rhizotomies for the rest of Plaintiff's life to rhizotomies for only five years.[74] However, because

---

[69] Rec. Doc. 48 at 1–2.

[70] Rec. Doc. 36-6.

[71] Rec. Doc. 34.

[72] Rec. Doc. 29-2 at 2.

[73] Rec. Doc. 34.

[74] Rec. Docs. 28-7, 29-10.

Defendants do not identify specifically how they would be prejudiced if the Court were to decline to exclude the second report and related testimony, the Court finds that this factor weighs in favor of allowing the testimony.

### iv.     Availability of a Continuance to Cure Prejudice

As noted above, the Court has concluded that Defendants have not identified any prejudice that they will suffer if the Court declines to exclude Dr. Rice's second report and therefore, no actions are needed to cure any prejudice.

### v.     Conclusion

Dr. Rice's two expert reports demonstrate that Plaintiff appears to want to have it both ways. The first expert report Plaintiff submitted listed medical expenses for a lifetime of rhizotomies.[75] Hours after Defendants filed a motion in limine to exclude the original report and testimony regarding a lifetime of rhizotomies on the grounds that the report is speculative and unreliable, and on the last day to submit motions in limine regarding expert testimony, Plaintiff submitted to Defendants a revised report by Dr. Rice that includes costs for five years of rhizotomies and future medical expenses associated with a spinal cord stimulator.[76] However, despite this revised report, Plaintiff does not concede that she no longer wishes to offer evidence regarding the cost of a lifetime of rhizotomies. Furthermore, the only proffered explanation for this late submission of an expert report is that during the deposition of Dr. Turnipseed, he testified that someday down the line, he may have a discussion with Plaintiff regarding a spinal cord stimulator, but that he cannot say for certain right now as he is in the middle of a treatment that is

---

[75] Rec. Doc. 28-7.

[76] Rec. Doc. 29-10.

helping her.[77]  Plaintiff does not provide any explanation for why she could not have obtained this information earlier. Therefore, Plaintiff's failure to comply with the Scheduling Order either evidences a failure to timely prepare her case as she failed to gain the information she needed to timely submit her economist report, or, as Defendants contend, an intentional attempt to circumvent the Court's Scheduling Order which required that Plaintiff's expert reports be submitted by January 27, 2016.[78] However, as Defendants have not identified any prejudice that they would suffer if the Court were to allow this testimony, the Court will not exclude the evidence on the basis that it fails to comply with Rule 26 and the Court's Scheduling Order. Therefore, the Court turns to Defendants' motion in limine to exclude the portions of Dr. Rice's second report pertaining to a spinal cord stimulator on the grounds that Dr. Rice's opinions are not reliable and that the testimony is substantially more prejudicial than probative.

### b.    Motion in Limine to Exclude Report and Testimony Regarding Future Lifetime Medical Expenses for a Spinal Cord Stimulator

Defendants move to exclude the portion of Dr. Rice's second report that provides a valuation of Plaintiff's future lifetime medical expenses for a spinal cord stimulator trial, an implant, a generator/replacement for the implant, and office visits associated with the stimulator, as well as testimony regarding the same.[79] Defendants contend that exclusion of this portion of Dr. Rice's second report is mandated by Federal Rules of Evidence 702(b) and 403 as there are not sufficient facts or data to support Dr. Rice's opinions, and any probative value of his expert opinion is substantially outweighed by the danger of unfair prejudice, misleading the jury, and wasting

---

[77] Rec. Doc. 40 at 4.

[78] Rec. Doc. 9 at 3.

[79] Rec. Doc. 35 at 2.

time.[80] In support, Defendants cite the same cases that they cited in connection with their motion to exclude Dr. Rice's expert report and testimony regarding medical expenses associated with a lifetime of rhizotomies, *Wilcox*, *Smith*, and *George*.[81] In opposition, Plaintiff asserts that both Dr. Turnipseed and Dr. Ioppolo have testified that if Plaintiff's medical condition continues, she will need to undergo some form of treatment in the future.[82] Plaintiff also cites a letter from Dr. Ioppolo to counsel for Plaintiff in which Dr. Ioppolo states that "we should keep doing the radiofrequency lesion[83] on her for as long as it gives her benefit. This is usually for about 4-5 years. Subsequent to that, if she has pain, I believe that she would be best treated with consideration for a spinal cord stimulator implantation."[84]

Defendants contend that there is "simply no evidence that a spinal cord stimulator for the remainder of the plaintiff's life is medically necessary beginning in 5 years."[85] Dr. Turnipseed testified that typically after five rhizotomies, the procedures lose their efficacy in terms of treating a patient's pain.[86] Dr. Turnipseed also testified that he anticipated the need for treatment other than rhizotomies when he answered "Yes" to the question "Has it been your experience through your training, education and background, . . . that over time though your expectation would be that

---

[80] *Id.* at 15.

[81] Rec. Doc. 35 at 10–14.

[82] Rec. Doc. 40 at 1–2.

[83] In Dr. Turnipseed's deposition, he states that radiofrequency thermocoagulation is synonymous with rhizotomy. Rec. Doc. 39-1 at 6. Therefore, it appears that Dr. Ioppolo is discussing performing rhizotomies prior to a spinal cord stimulator implantation.

[84] Rec. Doc. 40-2.

[85] Rec. Doc. 35 at 7.

[86] Rec. Doc. 28-4 at 4.

you're going to have to find something other than a rhizotomy to address Ms. Coston's pain?"[87]

Furthermore, Dr. Turnipseed testified that he could discuss a spinal cord stimulator with Plaintiff "down the line."[88] Therefore, as with the testimony regarding a lifetime of rhizotomies, this testimony is distinguishable from *Wilcox* where the plaintiff's doctor had stated that certain care would not be necessary after a certain amount of time.[89] To the extent that Defendants argue that Dr. Rice's calculations overestimate Plaintiff's future losses, Defendants may rely upon "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" to attack what it believes is "shaky but admissible evidence," but such evidence need not be excluded altogether.[90] Although at trial it will be Plaintiff's burden to demonstrate that her future medical expenses will more probably than not be incurred,[91] the Court cannot now state, without the context of testimony and evidence as developed through trial, that she will be unable to do so.

Defendants also contend that it would be substantially more prejudicial than probative to allow this evidence and testimony.[92] Pursuant to Federal Rule of Evidence 403, a court may exclude relevant evidence if its probative value is substantially outweighed by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Defendants only cite Rule 403 in the conclusion of their

---

[87] *Id.* at 7.

[88] *Id.* at 5.

[89] *Wilcox v. Max Welders, L.L.C.*, 12-2389, 2013 WL 4517907 (E.D. La. Aug. 22, 2013) (Africk, J.).

[90] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993) (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

[91] *Menard v. Lafayette Ins. Co.*, 2009-C-1869 (La. 3/16/10); 31 So. 3d 996, 1006.

[92] Rec. Doc. 35 at 15.

memorandum and do not make any argument other than to say that there is a danger of unfair prejudice, misleading the jury, and wasting time.[93] In light of the evidence in the record regarding future medical treatment and the possibility of a spinal cord stimulator implant, the Court concludes that the probative value of this testimony is not substantially outweighed by a danger of unfair prejudice, wasting time, or misleading the jury. In light of the evidence in the record at this time, the Court need not exclude the proffered report and testimony at this stage.

### III. Conclusion

For the reasons stated above, the Court concludes that as there is evidence in the record regarding Plaintiff's need for future medical treatment and specifically evidence regarding a spinal cord implant and the continuation of rhizotomies, the Court will not exclude Dr. Rice's reports or testimony regarding future medical expenses related to a lifetime of rhizotomies or a spinal cord stimulator implant. In addition, although Plaintiff failed to comply with the Court's deadline for the submission of expert reports, given that Defendants have been provided an opportunity to submit a motion in limine regarding Dr. Rice's second report, and the Court has reopened discovery to allow Defendants to depose Dr. Ioppolo, Defendants have not identified any prejudice that they would suffer should Dr. Rice be permitted to testify at trial regarding the second report.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' "Motion in Limine to Exclude Report of Plaintiff's Economist and Any Evidence and/or Testimony of Future Medical Expenses for Lifetime Rhizotomies,"[94] "Motion to Strike 'Revised' Report of Plaintiff's Economist G.

---

[93] *Id.*

[94] Rec. Doc. 28.

Randolph Rice,"[95] and "Motion in Limine to Exclude Revised Report of Plaintiff's Economist In Part and Any Evidence and/or Testimony of Future Lifetime Medical Expenses for a Spinal Cord Stimulator"[96] are **DENIED**.

      **NEW ORLEANS, LOUISIANA,** this   27th   day of April, 2016.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[95] Rec. Doc. 29.

[96] Rec. Doc. 35.

21